## PLAIN v. HORNE et al.

### (Circuit Court, D. Idaho, S. D.   April 24, 1912.)

### No. 363.

UNITED STATES (§ 125*)—CONTRACTS—ENFORCEMENT—SUIT AGAINST OFFICERS.

Where it was claimed that the United States had contracted for the sale of a water right under the Reclamation Act for the irrigation of certain lands entered by the complainant and situated within the district of lands compromising a reclamation project in consideration of $26 per acre, payable in installments, a suit against the register and receiver of the Land Office, the engineer in charge of the work, and the United States fiscal agents appointed to collect the charge to restrain them from extending or collecting assessments in excess of $26 per acre was, in fact, a suit to compel specific performance of a contract against the United States and unsustainable without the government's consent.

[Ed. Note.—For other cases, see United States, Cent. Dig. §§ 113, 114; Dec. Dig. § 125.*]

In Equity.   Suit by Jesse S. Plain against P. F. Horne and others.   On motion to dismiss for want of jurisdiction.   Sustained.

J. D. Akins, of Rupert, Idaho, for plaintiff.
C. H. Lingenfelter, U. S. Dist. Atty., and B. E. Stoutemyer, of Boise, Idaho, for defendants.

DIETRICH, District Judge.   While this suit upon its face purports to be one against the individual defendants named, who are officers and agents of the general government, it is in reality an action against the United States to enforce the performance of an alleged contract for the sale of a water right under the Reclamation Act for the irrigation of certain lands entered by the complainant, and situated within the district comprising the Minidoka reclamation project in the state of Idaho. A notice, dated November 25, 1904, published by authority of the Secretary of the Interior under the provisions of Act June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1911, p. 662), commonly known as the "Reclamation Act," stated that it was "believed" that large areas of land, of which the tract entered by complainant was a part, would be "susceptible of irrigation from the works now in course of construction, known as the Minidoka reclamation project in Idaho," and that the charges which would be made upon entries were "estimated to be $26.00 per acre, payable in ten annual installments of $2.60 per acre."   It is alleged that the complainant made his entry pursuant to this notice, but the date when it was actually made is not stated.   The complainant's contention is that the notice as given, followed by the complainant's entry of the lands in question, gave rise to a contract between him and the United States which obligated the government to sell to complainant a perpetual water right for the irrigation of the entered lands at a price not to exceed the sum of $26 per acre.   On March 9, 1907, notice was given that water would

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

be furnished from the project at the opening of the irrigation season of that year, and that the charges were to be in two parts, to wit, construction charges, definitely fixed at $22 per acre, payable in not less than five nor more than 10 annual installments, each not less than $2.20 per acre, and charges for maintenance and operation, to be determined as soon as the data therefor were available, but fixed for the irrigating season of 1907 at 40 cents per acre of irrigable land; the notice further stating that the amount due and payable for maintenance and operation in subsequent years would be "as announced by the Secretary of the Interior each year." No change has been made in the amount of construction charges as fixed by the notice of March 9, 1907, but the charges for maintenance and operation were increased to 60 cents per acre for the year 1909 to 75 cents for the year 1910, and to $1.75 for the year 1911. Injunctive relief is asked against the defendants Horne and Harte, register and receiver, respectively, of the United States Land Office at Hailey, Idaho, Fogg, project engineer in charge of the work and managing the project, and Jensen and Hedden, United States fiscal agents appointed under Act June 17, 1902, for the purpose of collecting the charges. The prayer is that they be enjoined from extending the assessments as made or any assessment for any purpose in excess of the sum of $26 per acre in ten installments of $2.60 each, and that they be restrained from shutting off or interfering with the water to which complainant is entitled.

The position which the complainant maintains, and the ends to be accomplished by means of this suit, are stated in the brief of his counsel as follows:

"The offer on the part of the government made by the Secretary of the Interior and published as a legal notice to the public was an offer to the public, and, when accepted by an individual who complies with its terms, creates a valid binding contract. This offer was a clear, definite promise of the government to deliver water to certain lands and give a perpetual water right for $26 per acre, payable in ten annual installments, if plaintiff would settle on said lands, comply with the homestead and reclamation laws, and make the payments. That offer was accepted, plaintiff settled on said lands and complied with the terms of the laws and notice, and now and here demands that the government live up to the terms of the contract."

It plainly appears that the ultimate purpose of the suit is to compel the specific performance of a contract by enjoining the breach thereof. The contract here, if any there be, is between the plaintiff and the United States, and not between the plaintiff and the defendants. The United States is therefore an indispensable party. The complainant "demands that the government live up to the terms of the contract"; but without its consent the government cannot be subjected to the jurisdiction of the courts and compelled to discharge its obligations; and what cannot be done directly cannot be done indirectly. A suit against the officers and agents of a state to compel them to perform its contracts is to all intents and purposes a suit against the state itself. Re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608, 29 L. Ed. 805; Louisiana v. Jumel, 107 U. S. 726, 2 Sup. Ct. 128, 27 L. Ed. 448; Cunningham

v. Macon, etc., R. Co., 109 U. S. 446, 3 Sup. Ct. 292, 609, 27 L. Ed. 992; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363; Murray v. Wilson Distilling Co., 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742; Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. 919, 44 L. Ed. 1140; Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535; Case Note, 5 Ann. Cas. p. 295.

The motion to dismiss the suit for want of jurisdiction must therefore be sustained, and an order will be entered accordingly.